Edward H. Laber (Atty #010334)
LAW OFFICES OF EDWARD H. LABER, LTD.
33 North Tucson Boulevard
Tucson, Arizona 85716
(520) 624-3000
Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| José M. Lerma and Yolanda M. Lerma, Husband and Wife<br><br>Plaintiffs,<br><br>vs.<br><br>MBNA America Bank, N.A., a Delaware Corporation or Business Entity doing business in the District of Arizona;. Business Entities I-V, John Does 1-5, Inclusive.<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>(Assigned to the Hon. |

### Jurisdiction And Venue

1. Plaintiffs are citizens and residents of the State of Arizona.

2. Defendant MBNA America Bank, N.A. ("MBNA") a business corporation or entity has its principal place of business in the State of Delaware.

3. The amount in controversy exceeds $75,000, exclusive of interests and costs.

4. Jurisdiction in this Court arises pursuant to 28 U.S.C. §1332 (a), diversity of citizenship; pursuant to 9 U.S.C. §4, Federal Arbitration Act; 15 U.S.C. §1681, et. seq., Federal Fair Credit Reporting Act; and 28 U.S.C. 1367, supplemental jurisdiction statutory provision.

5. Venue is proper pursuant to 28 U.S.C. 1391 (a)(2) as a substantial part of the events or omissions giving rise to the following claims occurred in Arizona and a substantial part of the property that is the subject of this action is situated in

Arizona.

## General Allegations

6. Defendant, MBNA, when alleged to have acted and engaged in conduct leading to the causes of action raised in this Complaint, did so through its duly authorized officers, agents and/or employees whose conduct is lawfully imputable to corporate Defendant MBNA.

7. Plaintiffs have named fictitious Defendants in this Complaint, the identities of which are unknown to Plaintiffs and leave is requested from this Court to amend the Complaint in this regard once the true identities of said Defendants may be ascertained.

8. Plaintiff José M. Lerma, at all times relevant hereto, had several established credit card accounts extended to him and kept open by Defendant MBNA.

9. All of the aforesaid MBNA accounts were kept current with respect to monthly payments by Plaintiff José M. Lerma (some for a period of years) and the others were simply not utilized by Plaintiff and kept with a zero balances.

10. During the latter part of 2004 and continuing to approximately the end of March of 2005, one Naomi Noriega ("Noriega"), during such time period a secretary to Plaintiff José M. Lerma's law practice, engaged in the unlawful and fraudulent practice of commandeering Plaintiff José M. Lerma's mail and stealing unsolicited promotional cash advance checks mailed to Plaintiff by MBNA and other financial institutions who had extended credit to Plaintiff.

11. The aforesaid promotional and unsolicited checks were filled out by Noriega as payee and Noriega then forged Plaintiff José M. Lerma's wife's name, Yolanda M. Lerma, as authorized signor on said checks. These forged checks were deposited by Noriega into her personal credit union account and whereafter cash advances

were then made by MBNA to Noriega's bank account on the basis of these fraudulent checks. Noriega then converted such funds to her own personal use and benefit.

12. Plaintiffs never explicitly, implicitly or otherwise authorized, approved or ratified Noriega's acceptance, use or negotiation of said cash advance checks. Likewise, Noriega had no authority whatsoever to sign either plaintiff's name as signor on the checks.

13. To the best of Plaintiffs' recollection José Lerma was the only authorized signor on the relevant accounts and Yolanda M. Lerma was not an authorized signor.

14. Beside the MBNA accounts which are the subject of these disputes, Noriega, in the manner described above, forged checks on several other credit card accounts established between Plaintiff and other financial institutions. She also forged checks from Plaintiff José M. Lerma's business accounts.

15. Noriega's activities went undetected by Plaintiffs, until April 1, 2005, as she was intercepting plaintiff's mail and was using a second set of Plaintiff's business checks to service some of the debt being accrued on the credit card accounts by Noriega's use of the aforesaid cash advance checks. All of Noriega's actions were done with the purpose of defrauding both plaintiffs and defendant.

16. On April 1, 2005 Plaintiffs first learned about irregularities in the aforesaid MBNA accounts (and others) as a result of a phone call from MBNA seeking payment on "delinquent" accounts.

17. Plaintiffs immediately initiated an investigation to obtain all information then available to establish to MBNA's satisfaction the fraudulent nature of the debts alleged to have been incurred by Plaintiff José M. Lerma. The matter was immediately reported to the Tucson Police Department and is still, as of this date, under investigation (Incident No. 0504010626).

18. MBNA was immediately advised by Plaintiffs as to the fraudulent nature of the transactions involving the aforesaid cash advances and Noriega, both by telephone calls and correspondence. Plaintiffs advised Defendants that the debts incurred by Noriega were disputed. Plaintiffs continued their efforts to encourage MBNA to investigate Plaintiffs' assertions until the filing of this Complaint. Plaintiff, José M. Lerma, from the inception of this dispute, advised MBNA that there may have been a relatively small balance legitimately due and owing on one or more of Defendant's credit card accounts and that Plaintiff would willingly pay the same upon a full accounting and review of the records being performed by MBNA. MBNA instead changed and/or consolidated account numbers ostensibly for the purpose of streamlining its collection efforts or to obfuscate issues of fraud or both. As a result, it is now much more difficult for Plaintiffs to determine what may be legitimately due and owing by Plaintiffs to MBNA.

19. Upon information and belief, Plaintiffs allege that they owed approximately two thousand dollars total on two of the MBNA accounts in dispute. Defendants are claiming an indebtedness in excess of Twenty-Five Thousand dollars on the consolidated accounts.

20. Initially, MBNA's fraud division advised Plaintiff in writing that at least one of the accounts had fraudulent activity. Later, however, MBNA changed it's position, falsely stating that "after a thorough investigation" MBNA had determined that there was no fraudulent activity and that Plaintiff José M. Lerma would remain "responsible" on the MBNA accounts. This communication was received on April 5, 2005, four days after the fraud was reported to MBNA and one day after MBNA had found that there was fraudulent activity on at least one of the accounts.

21. Thereafter, MBNA engaged in a flurry of telephone calls and correspondence to Plaintiffs advising Plaintiffs to pay the amounts claimed due by MBNA or in the

1  alternative suffer the consequences of debt collection, by lawsuit or otherwise
2  and/or of adverse credit reporting by MBNA. These frequent and demeaning phone
3  calls and correspondence to Plaintiffs continued even after Defendants were advised
4  by Plaintiffs that they had retained Counsel to represent them in Defendant's debt
5  collection efforts.

22. MBNA, in furtherance of its malicious and extortionate efforts to collect indebtedness, fraudulently incurred by Noriega but attributed to plaintiffs, furnished information to nationwide credit reporting agencies indicating that such indebtedness, delinquencies and defaults thereon were the responsibility and legitimate debt of Plaintiffs. Defendant intended and was successful in having such negative credit notations included in the credit reports issued by such agencies. Upon securing credit reports from said credit reporting agencies, Plaintiffs counsel advised said credit reporting agencies that the MBNA matters reflected in the reports were disputed.

23. After such notice of dispute was forwarded to the nationwide credit reporting agencies the onus to conduct a reasonable investigation with respect to the dispute under the Fair Credit Reporting Act was on MBNA.

24. No such reasonable investigation was at any time conducted by Defendant MBNA and although it had actual, direct and specific knowledge of the facts in support of the dispute it proceeded to affirmatively advise the credit reporting agencies to maintain the inaccurate and negative information on Plaintiffs' credit reports.

25. In addition to its direct telephone calls and correspondence to Plaintiffs and Defendant's unlawful credit reporting to the major credit reporting agencies in the country, MBNA is now seeking to collect on three separate claims against Plaintiffs through arbitration in the National Arbitration Forum.

26. Defendant has filed the following claims against Plaintiff José M. Lerma in the

National Arbitration Forum:

    a.    FA0509000569596 for $14,359.52, interest of $295.00 (and accruing at 10%) and attorneys fees of $2,153.92.

    b.    FA0509000567204 for $9,800.28, interest of $182.58 (and accruing at 10%) and attorneys fees in the sum of $1470.04.

    c.    FA0510000573797 for $1,139.19, interest of $25.46 (and accruing at 10%) and attorneys fees in the amount of $169.97.

27. Plaintiffs did not meaningfully negotiate nor did they agree to arbitration of any disputes which might have arisen with respect to the credit card accounts Plaintiff José M. Lerma held with MBNA.

## First Cause of Action

**(Non-existence of Arbitration Agreement and Necessity For a Stay of Arbitration Proceedings.)**

28. All prior allegations are incorporated *in haec verba*.

29. The arbitration clause of a credit "agreement" upon which MBNA is ostensibly proceeding before the National Arbitration Forum is a nullity because neither the Arbitration clause nor the scope of the issues sought to be resolved in arbitration were agreed to by Plaintiffs.

30. The arbitration clause alleged by MBNA to bind Plaintiff José M. Lerma to arbitrate claims arising out of a "credit contract" between the parties is unenforceable on the grounds that 1) unconscionability given the overwhelming economic power vested in Defendant in dealing with its customers; 2) unilaterally dictating the economic conditions upon which any credit agreement will be extended by MBNA; and 3) MBNA's methods of attempting to include an arbitration clause in a credit agreement not entered into at arms length by the parties.

31. Assuming, arguendo, that an arbitration clause was intended by the parties to resolve disputes regarding the credit card accounts which are the subject of this dispute, the issue of arbitration under such a clause and under the circumstances herein alleged would be moot, since under 12 CFR § 226.12 (a)(2)(b)(1) liability of a credit card holder for unauthorized use of a credit card holder for unauthorized use of a credit card is a maximum of fifty dollars ($50.00).

32. A stay of the aforesaid arbitration proceedings is necessary in order for the Court to determine the issues as to the existence of an arbitration agreement, the proper enforcement of an agreement, if one is found to exist, and as to the scope of the issues which are subject to arbitration.

33. This Court has the jurisdiction and power to Order such a stay of the arbitration proceedings, to make findings and Orders on the aforesaid threshold issues pursuant to Section 4 of the Federal Arbitration Act.

WHEREFORE, Plaintiffs request relief as follows:

a. For a Court Order Staying the Arbitration Proceedings referenced in this Complaint.

b. For an Order determining the non-existence and/or unenforceability of the purported arbitration agreement.

c. For an award of attorney's fees and costs under applicable state contract law.

## SECOND CAUSE OF ACTION
### (Violations of Fair Credit Reporting Act)

34. All prior allegations are incorporated *in haec verba*.

35. MBNA received notice from the credit reporting agencies to which it had previously

furnished negative credit information that such furnished information was disputed by Plaintiffs. As a result, MBNA had the affirmative obligation to conduct a reasonable investigation regarding the nature of the dispute pursuant to 15 U.S.C. § 1681 s-2(b).

36. MBNA had direct and actual knowledge as to the specific details and particulars of Plaintiffs' disputed claims because of the many telephone calls and extensive correspondence between MBNA, plaintiffs and their respective counsel.

37. The reasonableness of the investigation required to be conducted by MBNA as set forth above is to be determined within the parameters of Defendant's entire knowledge and familiarity with the facts provided by Plaintiff as to the credit dispute as well as to the notices received by Defendant from the credit reporting agencies involved.

38. In addition to conducting an investigation with respect to the disputed information, MBNA had the duties to: 1) review all relevant information provided by the consumer reporting agencies; 2) to report the results of the investigation to the consumer reporting agencies; and 3) if the investigation found that the information was incomplete or inaccurate, to report those results to all other consumer reporting agencies to which Defendant furnished information pursuant to 15 U.S.C. §1681 et. seq.

39. Plaintiffs allege upon information and belief that, despite receiving the aforesaid notices of dispute from the credit reporting agencies and not having conducted an investigation as required by law, MBNA continued and continues to report said claims as "verified" claims which should be retained and reflected as such in the credit agencies reports.

40. Defendant wilfully and maliciously failed to comply with the requirements imposed upon it by the Federal Fair Credit Reporting Act as set forth above.

41. As a result of Defendant's willful actions as described above Plaintiffs have suffered embarrassment, humiliation, mental pain, suffering and anxiety, and an adverse impact upon their professional, personal, social and economic lives.

42. It is anticipated that Plaintiffs will continue to suffer damages well into the future as a result of the Defendant's willful and malicious actions.

WHEREFORE, Plaintiffs request relief from the Court as follows:

a. For an award of compensatory damages in a sum of not less than five hundred thousand dollars ($500,000).

b. For an award of punitive damages in a sum of no less than five hundred thousand dollars ($500,000).

c. For an award of Attorney's fees and costs as provided for in 15 U.S.C.A. § 1681 n(c).

### Third Cause of Action
### (Defamation)

43. All prior allegations are incorporated *in haec verba*.

44. MBNA's communications and furnishing false and inaccurate information regarding Plaintiff's credit worthiness to nationwide credit reporting agencies constituted a "publication" within the meaning of the State of Arizona's law on defamation.

45. The information furnished and continued to be furnished by MBNA to credit reporting agencies, and disseminated to others, constitute libelous and slanderous communications *per se* in that such communications falsely impugn Plaintiffs honesty, integrity, reputation and standing in the community.

46. The aforesaid communications by Defendant were willfully and maliciously made with the intent to injure and harm Plaintiffs.

47. At the times such communications regarding Plaintiffs alleged lack of credit worthiness were made, Defendant knew them to be false and knew that such communications created a substantial risk of significant harm to Plaintiffs. Defendant was motivated by an "evil mind" when such false statements were published, repeated and disseminated to other persons and/or entities.

48. The aforesaid defamatory statements by Defendant prejudiced and damaged Plaintiffs in that they damaged their reputation and standing in the community, caused them mental pain, suffering and anxiety, sullied and ruined their honesty, integrity and credit worthiness and otherwise negatively impacted upon by Plaintiffs' professional, personal, social and economic lives.

49. Defendant's tortious conduct as herein alleged, was the proximate cause of the injuries and damages upon Plaintiffs.

WHEREFORE, Plaintiffs request relief from the Court as follows:

a. For compensatory damages in an amount not less than five hundred thousand dollars ($500,000).

b. For punitive damages in an amount of not less than five hundred thousand dollars ($500,000).

c. For any further relief as to the Court may seem just and equitable.

## Fourth Cause of Action

(Intentional Infliction of Emotional Distress)

50. All prior allegations are incorporated *in haec verba*.

51. MBNA willfully and wrongfully failed to comply with its obligations under the Fair Credit Reporting Act by furnishing defamatory information to credit reporting agencies which MBNA knew would be disseminated nationwide.

52. MBNA willfully and wrongfully failed to comply with its obligations under the Fair

Credit Reporting Act in its efforts to utilize three separate and distinct arbitration claims before the National Arbitration Forum.

53. The conduct described in ¶¶51 and 52 constitute extreme and outrageous conduct intended by Defendant to intentionally cause Plaintiffs severe emotional distress for which Defendant is liable.

54. Defendant engaged in the aforesaid pattern of conduct fully cognizant of all of the facts involved in the credit dispute with Plaintiffs and intended to cause severe emotional distress to Plaintiffs as a way of attempting to extort payment of the disputed amounts from Plaintiffs. Defendant engaged in this conduct with an evil mind and in total disregard of Plaintiffs' rights and well-being.

55. MBNA's outrageous and malicious actions proximately caused damages to Plaintiffs which damage includes depressed emotional states, mental pain, suffering and anxiety and an adverse impact upon Plaintiffs' professional, personal, social and economic lives.

WHEREFORE, Plaintiffs request relief as follows:

a. For compensatory damages in a sum of not less than Five Hundred Thousand dollars ($500,000).

b. For punitive damages in a sum of not less than five hundred thousand dollars ($500,000).

c. For any such further relief as to the Court may seem appropriate.

DATED this 31st day of October, 2005.

s/ Edward H. Laber
Edward H. Laber
Attorney for Plaintiffs

VERIFICATION

County of Pima  )
                ) ss.
State of Arizona )

José M. Lerma, first duly sworn deposes and says that he and his wife, Yolanda Lerma, are the Plaintiffs in the above-captioned matter, that he has read the foregoing Complaint, knows the contents thereof, and that the matters alleged are true to the best of his information, knowledge and belief.

_____
José M. Lerma

Subscribed and sworn to before me this 31 day of October, 2005 by José M. Lerma.

_____
Notary Public



Official Seal
NOTARY PUBLIC
STATE OF ARIZONA
County of Pima
EDWARD H. LABER
My Commission Expires August 15, 2008

Page 12 of 12